DAVID SHERMAN, Plaintiff-Appellant, v. KRAFT GENERAL FOODS, INC., Defendant-Appellee.

Fourth District   No. 4—94—0772

Argued February 14, 1995.—Opinion filed June 8, 1995.

Robert G. Kirchner and Andrea Georgelos (argued), both of Lerner & Kirchner, of Champaign, for appellant.

Stephen L. Corn (argued) and John L. Barger, both of Craig & Craig, of Mattoon, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, David Sherman, appeals an order of the trial court dismissing his third-amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). The complaint alleged defendant, Kraft General Foods, Inc. (Kraft), terminated him from his employment in retaliation for reporting to Kraft an asbestos-related hazard in the workplace. On appeal, plaintiff contends he sufficiently pleaded (1) Kraft terminated him in retaliation for his activities; and (2) the termination violated a clearly mandated public policy. We agree and reverse.

Plaintiff made the following allegations in his third-amended complaint. He worked for Kraft from October 14, 1986, to May 12, 1992, at its facility in Champaign. While at Kraft, plaintiff became aware of the existence of a white dusty material in his work area. Plaintiff inquired as to the composition of the material, and John Getchel, "Plaintiff's safety representative," told him it may be asbestos. According to the complaint, the position of safety representative at Kraft includes the following duties:

> "receiving information from Defendant's employees regarding the safety and health conditions of the safety representative's assigned departments; remedying any safety or health hazards within the safety representative's designated department; and further reporting to Defendant any safety or health hazards that the safety representative is unable to remedy alone."

Plaintiff himself had previously been "appointed" safety representative. On May 11, 1992, plaintiff verbally reported the location of the material to Getchel, "the individual to whom Plaintiff was to report any unsafe conditions or health hazards within Plaintiff's work area."

Neither Getchel nor any other Kraft representatives informed plaintiff of any additional procedures necessary to report asbestos-related safety and health hazards.

Plaintiff told Getchel he intended to retrieve a piece of exposed and deteriorating insulation. After informing Getchel of his intentions, plaintiff retrieved a piece of the insulation so he could report the hazard to Kraft or, if necessary, to the Occupational Safety and Health Administration (OSHA). After plaintiff retrieved the insulation, Getchel told him to give it to plaintiff's immediate supervisor, Kirk Luna. Getchel also said Kraft would not want any asbestos-related hazards reported. Since Luna was not on duty on May 11, 1992, plaintiff sealed the insulation in a plastic bag and placed it in his toolbox with the intention of giving it to Luna the following day and, if necessary, to OSHA. On May 12, 1992, plaintiff's toolbox was confiscated, and the material was tested and determined to contain asbestos. On May 14, 1992, Kraft terminated plaintiff.

In granting Kraft's motion to dismiss, the trial court held that plaintiff pleaded a valid public policy. However, the court held that plaintiff failed to sufficiently plead he was terminated in retaliation for his activities. Specifically, the court stated:

"The pleading describes that [Getchel] works 'at' Defendant's plant. The pleading describes duties he apparently has. There is no language stating that this position as 'Plaintiff's Safety Representative,' is as a result of some action by, or relationship of Getchel's with the Defendant. *** The pleading does not indicate whether the safety representative position is a function of some informal relationship among employees, a union position, a government position, or a representative of the Defendant. Were Getchel's functions assigned by or conducted on behalf of the Defendant, it certainly would be simple enough to state that in a pleading. None of the efforts at pleading by the Plaintiff have done this. The Court is left to conclude that this omission must be because it cannot be pleaded that Getchel's position as 'Plaintiff's Safety Representative,' is as a consequence of some appointment, or empowerment, or function on behalf of the defendant."

■ Dismissal of a cause of action on the pleadings is only proper where it is clearly apparent that plaintiff can prove no set of facts that would entitle him to recover. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 483, 639 N.E.2d 1282, 1289.) In ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn therefrom. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 9, 607 N.E.2d 201, 205.) We review the ruling on a motion to

dismiss *de novo. Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51.

■ Illinois continues to adhere to the employment-at-will doctrine, where a noncontracted employee serves at the employer's will and can be discharged for any reason or no reason. (*Zimmerman v. Buchheit of Sparta, Inc.* (1994), 164 Ill. 2d 29, 32, 645 N.E.2d 877, 879; *Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 159, 601 N.E.2d 720, 728.) The Supreme Court of Illinois created a limited exception to this general rule by recognizing the tort of retaliatory discharge for employees discharged for exercising their rights under the Workers' Compensation Act (Act) (see Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.*). (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181-82, 384 N.E.2d 353, 357.) Following *Kelsay,* the supreme court held " '[a] plaintiff states a valid claim for retaliatory discharge only if [he] alleges that [he] was (1) discharged; (2) in retaliation for [his] activities; and (3) that the discharge violates a clear mandate of public policy.' " *Zimmerman,* 164 Ill. 2d at 35, 645 N.E.2d at 880, quoting *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911.

■ Plaintiff first argues he sufficiently pleaded he was discharged in retaliation for investigating and reporting asbestos hazards. In order to satisfy this requirement, plaintiff must necessarily allege Kraft had notice of his activities before terminating him. The trial court held plaintiff did not satisfy this requirement because he did not sufficiently plead the relationship, if any, between Getchel and Kraft. We disagree.

Plaintiff pleaded the following allegations to show Kraft had notice of plaintiff's activities before terminating him. Plaintiff had previously been "appointed" as safety representative. Plaintiff reported the hazard to Getchel, his safety representative "at" Kraft. The safety representative was the person to whom plaintiff was to report all health and safety conditions in his work area. Plaintiff was never informed of additional procedures necessary to report the hazard. Getchel's duties, as safety representative, included reporting health and safety hazards to Kraft. Plaintiff's toolbox, containing the potential asbestos sample, was confiscated the day after plaintiff retrieved it. Kraft terminated plaintiff two days later, allegedly in retaliation for his activities. Kraft argues that plaintiff's allegations are defective because he did not allege whether Kraft created the safety representative position. Since there has been no discovery in this case, plaintiff may have pleaded all that he can at this point. However, from these allegations, one could still reasonably infer that plaintiff reported the asbestos to Kraft through Getchel.

Furthermore, plaintiff can allege a retaliatory discharge cause of action even if he was terminated before formally reporting the asbestos to Kraft. In *Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 478 N.E.2d 1039, the court held that the plaintiff's retaliatory discharge action was not precluded simply because he was discharged prior to filing a workers' compensation claim. The court stated:

> "In situations where an employer allegedly fires an employee in order to prevent him from exercising his statutory rights, it would be anomalous to deny a cause of action simply because the discharge had its intended effect of causing the employee to postpone or forego the exercise of his rights. In light of these considerations and the need to promote the public policy expressed in the [Act], we hold that the plaintiff's allegations state a cause of action." (*Wolcowicz*, 133 Ill. App. 3d at 162, 478 N.E.2d at 1042-43.)

The reasoning in *Wolcowicz* applies equally to this case. It would be an absurd result to deny a plaintiff's cause of action for retaliatory discharge where the employer discovers the employee's intent to report an occupational hazard and terminates him before he does so. We conclude that plaintiff sufficiently alleged he was discharged in retaliation for his activities.

Kraft argues plaintiff failed to sufficiently plead that his discharge violated a clearly mandated public policy. The trial court held that plaintiff adequately alleged a clearly mandated public policy. In his complaint, plaintiff alleged Illinois has a clearly mandated public policy "which prohibits the discharge or discrimination against any employee who complains of occupational health hazards and the discharge of any employee in order to prevent that employee from reporting occupational health hazards." Initially, we note that the supreme court recently rejected a retaliatory demotion or discrimination cause of action. (*Zimmerman*, 164 Ill. 2d at 39, 645 N.E.2d at 882.) Therefore, the public policy must be to prevent the discharge, not demotion of or discrimination against, employees reporting occupational hazards.

■ In discussing what constitutes a "clearly mandated public policy," the Supreme Court of Illinois stated:

> "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878.)

In dividing matters that are the subject of public policies from purely personal matters, the court stated "a matter must strike at the heart

of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878-79.

■ Retaliatory discharge actions are generally allowed in only two situations. The first is when an employee is discharged for filing a claim under the Act. (See *Kelsay*, 74 Ill. 2d 172, 384 N.E.2d 353; *Lambert v. City of Lake Forest* (1989), 186 Ill. App. 3d 937, 941-42, 542 N.E.2d 1216, 1219 (and cases cited therein).) The second is when an employee is discharged for reporting illegal or improper conduct, sometimes referred to as "whistle blowing." See *Lambert*, 186 Ill. App. 3d at 942-43, 542 N.E.2d at 1219-20 (and cases cited therein).

■ Plaintiff's complaint falls into the whistle-blowing category. There are two main sources for the public policy. First, in *Palmateer,* the plaintiff claimed he was discharged for supplying information to the police that a fellow employee might be violating the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1979, ch. 38, par. 1—1 *et seq.*). The court stated there was no public policy more basic than enforcing the Code. In reaching this conclusion, the court relied, in part, on the preamble to the 1970 Illinois Constitution for the proposition that "[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." *Palmateer*, 85 Ill. 2d at 132, 421 N.E.2d at 879.

In *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 584 N.E.2d 104, the plaintiff alleged he was discharged for telling the president of Gambro, Inc., that he would do whatever was necessary to stop the sale of kidney dialyzers that did not comply with regulations promulgated by the Food and Drug Administration (FDA). The court held that plaintiff's allegations triggered the clearly mandated public policy favoring the protection of the lives and property of citizens, as in *Palmateer*. However, the court ultimately held the plaintiff failed to state a claim because the plaintiff was the general counsel for the defendant. (*Balla*, 145 Ill. 2d at 499-500, 584 N.E.2d at 107-08.) In *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641, the plaintiff alleged he was discharged for refusing to work in the handling of radioactive material while the operations were being conducted in violation of regulations published by the Nuclear Regulatory Commission (NRC). The supreme court held that the protection of the lives and property of citizens from radioactive material was as important and fundamental as protecting them from crime, as recognized in *Palmateer*. *Wheeler*, 108 Ill. 2d at 510-11, 485 N.E.2d at 377.

Clearly, reporting asbestos-related occupational hazards implicates more than personal interests. Like the allegations in *Palma-*

*teer, Balla,* and *Wheeler,* allowing an employee to report occupational health hazards, such as asbestos, without being discharged, furthers the public policy of protecting the lives and property of the citizens of the State of Illinois as stated in the preamble to the 1970 Illinois Constitution.

The Occupational Safety and Health Act of 1970 (OSH Act) (29 U.S.C. § 651 *et seq.* (1988)) is a second source of public policy. Federal regulations enacted pursuant to the OSH Act regulate asbestos levels in the workplace. (29 C.F.R. § 1910.1001 (1994).) In addition, section 11(c)(1) of the OSH Act states:

> "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [OSH Act] or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this [OSH Act]." 29 U.S.C. § 660(c)(1) (1988).

For purposes of the tort of retaliatory discharge, public policy can be found in Federal law. In *Wheeler,* the supreme court held that the congressional findings (42 U.S.C. § 2012 (1982)) and the declaration of public policy (42 U.S.C. § 2011 (1982)) in the Atomic Energy Act of 1954 (42 U.S.C. § 2011 *et seq.* (1982)) clearly enunciated a public policy which was of national scope. (*Wheeler,* 108 Ill. 2d at 506, 485 N.E.2d at 374-75.) In *Balla,* the court held the plaintiff's efforts to stop the sale of medical equipment that did not meet FDA requirements advanced the clearly mandated public policy of protecting the lives of citizens. (*Balla,* 145 Ill. 2d at 499, 584 N.E.2d at 107-08.) In *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746, 749-50, 498 N.E.2d 575, 577-78, the court allowed a retaliatory discharge cause of action when an employee was discharged after complaining to his superiors about certain accounting practices of the employer which the employee believed to be violations of Federal security laws.

Courts of other jurisdictions have recognized a retaliatory discharge cause of action where the plaintiff alleges he was discharged in retaliation for reporting occupational hazards at his employment to OSHA. *Schweiss v. Chrysler Motors Corp.* (8th Cir. 1990), 922 F.2d 473, 474; *Lepore v. National Tool & Manufacturing Co.* (1988), 224 N.J. Super. 463, 468-70, 540 A.2d 1296, 1298-99, *aff'd* (1989), 115 N.J. 226, 557 A.2d 1371 *(per curiam); Kilpatrick v. Delaware County Society for the Prevention of Cruelty to Animals (S.P.C.A.)* (E.D. Pa. 1986), 632 F. Supp. 542, 546.

In this case, plaintiff never actually reported the violation to

OSHA before he was terminated. However, that is not fatal to plaintiff's case. The United States Secretary of Labor has interpreted section 11(c) of the OSH Act as affording protection from discharge to employees who make occupational safety hazard complaints to the employer rather than to the appropriate agency. (29 C.F.R. § 1977.9(c) (1994).) In addition, in *Wheeler,* the plaintiff did not report the Federal nuclear safety violations to the NRC. However, the supreme court stated:

> "We do not agree with the appellate court that the question whether the facts as alleged involved public policy, or a matter of private concern, depended upon whether a complaint was made to the regulatory authorities. The legislation and the regulations declared the public policy, and the existence of that public policy did not depend upon whether plaintiff had communicated a complaint to the [NRC] or whether its investigation preceded or followed that complaint." *Wheeler,* 108 Ill. 2d at 509-10, 485 N.E.2d at 376.

In summary, we conclude that plaintiff sufficiently pleaded his discharge violated the clearly mandated public policy preventing the discharge of employees for reporting occupational health hazards. The sources of that policy are the preamble to the 1970 Illinois Constitution and section 11(c) of the OSH Act.

Since section 11(c) of the OSH Act is a source of public policy, we must also decide whether it preempts plaintiff's retaliatory discharge cause of action. We hold that it does not. See *Fragassi v. Neiburger* (1995), 269 Ill. App. 3d 633, 637-38, 646 N.E.2d 315, 318; *McElroy v. SOS International, Inc.* (N.D. Ill. 1989), 730 F. Supp. 803, 809; *Schweiss,* 922 F.2d at 476; *Kilpatrick,* 632 F. Supp. at 548; *Sorge v. Wright's Knitwear Corp.* (E.D. Pa. 1993), 832 F. Supp. 118, 120-21; *Lepore,* 224 N.J. Super. at 482-84, 540 A.2d at 1306-07; *cf. Kerker v. Elbert* (1994), 261 Ill. App. 3d 924, 930, 634 N.E.2d 482, 486 (the OSH Act does not preempt the Illinois Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992)).

For the foregoing reasons, we reverse the trial court's order dismissing plaintiff's third-amended complaint.

Reversed.

KNECHT, P.J., and McCULLOUGH, J., concur.