(No. 95-CC-0593—

GEORGE MCCOPPIN, JR., Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 17, 2001.*

LERNER AND KIRCHNER (ROBERT KIRCHNER, of counsel), for Claimant.

FLYNN, PALMER & TAGUE (RICHARD P. KLAUS, of counsel), for Respondent.

## OPINION

RAUCCI, C.J.

This cause is before the Court upon a recommendation from Commissioner Owen following an evidentiary hearing.

The Claimant, George McCoppin, Jr., filed a complaint for wrongful discharge, alleging that he was terminated from his employment with the University of Illinois in retaliation for reporting acts of misconduct and potentially criminal wrongdoing by a supervisor.

### Facts

At the hearing, the Claimant testified that he was 49 years of age and that he had first been employed at the University of Illinois in October of 1981, when he was hired as a crop tester in the Department of Plant Pathology. Prior to July of 1991, Claimant had received annual evaluations that were outstanding.

Claimant testified that during 1989 and 1990 he had furnished information in an investigation about acts of misconduct by Dr. White, his supervisor in Plant Pathology. Claimant stated that on two occasions prior to July of 1991, Dr. White had made threats of harm against him and his family.

In July of 1991, Claimant's position as a crop tester in Plant Pathology was eliminated and, in accordance

with the civil service rules, he was able to bump a less senior employee and become a crop tester in the Department of Agronomy.

After Claimant became a crop tester in Agronomy, he had one person below him on the seniority list named Craig Anderson. Subsequently Craig Anderson's position was restructured to crop tester specialist. In July 1993, a crop tester position in Agronomy was eliminated and Claimant was laid off.

At the time Claimant was making $13.05 an hour, which was just over $26,000 a year. Claimant received retirement, free health insurance for himself, and tuition waivers for himself and his children. After Claimant's termination from the University of Illinois, his wife had to pay an additional $150 per month to cover him on her health insurance. In July of 1994, Claimant obtained employment with Caterpillar at the rate of $18.05 an hour and was still employed there at the time of the hearing. During the period from July of 1993 and July of 1994, Claimant did obtain employment at Central Stores at the University of Illinois for 90 days. This employment came within ten days of his being terminated as a crop tester.

Kerrin Thompson testified that she is employed by the University of Illinois in the Personnel Services Office. During the period of time from 1991 to 1993, she was an auditor job analyst, in which she reviewed positions for civil service employees, did onsite audits to determine that they were appropriately classified or took whatever action was necessary to effect the appropriate classification.

In 1992, she participated in auditing all of the Crop Testing Technician positions. At that time, the title for five employees was changed from Crop Testing Technician to Crop Testing Specialist. The State University Civil

Service System approved the creation of the new classification of Crop Testing Specialist. Ms. Thompson testified that, when performing an audit, the Personnel Services Office determines what classifications are established.

Elyne Cole testified that she is an employee of the University of Illinois in the Personnel Services Office and one of her responsibilities, during the period from 1991 to 1993, was that she was responsible for layoffs. Ms. Cole testified that there is a difference between a layoff and a discharge, in that a layoff is an elimination of a position and a discharge is action taken against a certain individual to separate that person's employment from the University.

In 1991, she was notified that the Department of Plant Pathology was planning to eliminate a position. She then analyzed the position and found out who was the very least senior employee in that classification. The Claimant's position was going to be eliminated and he then had employment rights to bump or not bump and he elected to bump the position occupied by Kevin Williams in the Department of Agronomy. Kevin Williams took an exam for a farmer classification and was hired as a farmer in the lower paying classification.

In 1993, the position occupied by Claimant in the Department of Agronomy was eliminated and he was notified that his position was being eliminated and that he was the least senior employee in that classification and therefore did not have any bumping rights. The Claimant is still listed as a Crop Testing Technician on the register and, if that position is ever refilled, he would be the person first called up for reemployment.

Ms. Cole testified that an employee has a right under the civil service rules to challenge any action being taken against them, including determinations in respect to layoffs

and bumping rights. Ms. Cole testified that the Claimant did not make any such request pursuant to the elimination of his position in 1991 nor pursuant to the layoff determination in 1993. The Department of Agronomy determined that they needed to layoff due to budgetary constraints and Personnel Services made no independent determination whether or not that was a truthful reason.

Gary Heichel testified that, from April 1, 1990 through August 20, 1995, he was head of the Department of Agronomy at the University of Illinois. During his tenure as head of the Department of Agronomy, he was in charge of the budget process for his department. Funding for a fiscal year for the Department would run from July 1 to June 30. During the period from 1990 to 1994, funding from the Illinois State Legislature was inadequate to meet the needs of the University and it was necessary for the Department to reallocate funds in the amount of $70,000 to $150,000 per year. His budget allocations are subject to approval by the Dean of the College. In 1993, it was necessary to effectuate a 4% budget reduction. This was effectuated by not filling empty positions and reallocating some positions or a portion of some positions from State funds to non-State funds or grant funds.

In fiscal year 1994, which ran from July 1, 1993, through June 30, 1994, funding reductions of 2% were necessary. He made the decision to eliminate Claimant's position. There were not any non-State funds available to defray the elimination of the position which was eliminated and remained eliminated as of the date of the hearing.

Dr. Heichel testified that he did not know the Claimant until the Claimant came to work for the Department of Agronomy in 1991, and that he had not met Dr. White prior to August of 1994. Dr. Heichel further testified that, prior to preparing the budget in 1993 that eliminated

Claimant's position, he did not have any conversation with Dr. White concerning Claimant and that he was unaware of the investigation of Dr. White.

Dr. Heichel testified that he would have discussed the elimination of the position with other members of his Department of Agronomy faculty and that one factor in eliminating Claimant's position was that there were no non-State funds to replace the State funds as there were in other positions, so that the only thing they could do to eliminate the State funds that were going to that position was to eliminate the position. Dr. Heichel admitted that a number of faculty members did receive raises at this time, in some cases a very substantial amount, but also stated that some of these raises were to encourage early retirements which allowed the department to then eliminate the position.

## Legal Analysis

### Retaliatory Discharge

Illinois recognized a cause of action for retaliatory discharge in *Kelsey v. Motorola Inc.* (1978), 74 Ill. 2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353.

A Claimant has a valid claim for retaliatory discharge, if Claimant was discharged in retaliation for his or her activities and the discharge violates a clear mandate of public policy. (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 116 Ill. Dec. 694, 519 N.E.2d 909.) Although many of the Illinois cases deal with workers' compensation cases, Illinois has recognized a cause of action for retaliatory discharge, when the public policy involved reporting wrongdoing. *Sherman v. Kraft* (1995), 272 Ill. App. 3d 833, 209 Ill. Dec. 530, 651 N.E.2d 708; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 52 Ill. Dec. 13, 421 N.E.2d 876.

Under the evidence presented in this case, Claimant has failed to prove a valid claim for retaliatory discharge. Claimant's claim that he was discharged for reporting acts of misconduct by Dr. White is not supported by the evidence. The decision to layoff the Claimant was initiated by the head of the Department of Agronomy, who testified that he had no knowledge of Claimant's allegations against Dr. White and that he did not even know Dr. White prior to making the decision to layoff Claimant. The layoff was part of the budget process, whereby a position needed to be eliminated to meet budgetary reductions. All of the rules and regulations of the Department were followed in eliminating the position occupied by Claimant, and there was no evidence to support his allegation of retaliation.

## Exhaustion of Remedies

In addition, Claimant failed to exhaust his remedies. The question of exhaustion of remedies was raised in one of the Respondent's motions for summary judgment but was never addressed by this Court.

This Court in *Devaney v. State* (1996), 48 Ill. Ct. Cl. 461, held that the Claimant, in a case for retaliatory discharge, was first required to exhaust the remedies with the Merit Commission of the office of Secretary of State.

In the present case, Claimant could have protested his discharge through the Civil Service Rules and Regulations of the University of Illinois, but failed to do so.

It is hereby ordered that this claim is denied.