FIRST DIVISION
December 18, 2006

No. 1-05-3386

| | | |
|---|---|---|
| CUTBERTO GOMEZ, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | No. 02 L 1095 |
| | ) | |
| THE FINISHING COMPANY, INC., | ) | Honorable |
| | ) | Allen S. Goldberg, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE CAHILL delivered the opinion of the court:

A jury returned a verdict in favor of plaintiff Cutberto Gomez, who had filed a complaint

for retaliatory discharge against defendant The Finishing Company, Inc., his former employer.

The jury answered "yes" to the special interrogatory: "Was [p]laintiff terminated from his

employment in retaliation for calling the Occupational Health and Safety Administration

[(OSHA)]?"  The jury awarded plaintiff compensatory and punitive damages of $111,601.74.

Defendant filed and the trial court denied posttrial motions for: (1) a judgment notwithstanding

the verdict (judgment *n.o.v.*), (2) a directed verdict and (3) remittitur.  Defendant appeals from

those rulings.  It also raises the collateral issues of whether the verdict was against the manifest

weight of the evidence; whether plaintiff established *prima facie* evidence of retaliatory discharge

and specifically, whether plaintiff provided evidence of pretext; whether defendant was entitled to

a directed verdict due to plaintiff's failure to provide sufficient evidence of pretext; whether the court committed reversible error in ruling on certain motions *in limine*; and whether the court committed reversible error in denying defendant's posttrial motion requesting, *inter alia*, a new trial and remittitur. We affirm.

Plaintiff began working for defendant in 1990. He received promotions and raises during his tenure. At the time of his discharge he was the first-shift supervisor in the powder coating division plant, where wire racks were treated with spray paint finishes.

On March 3, 2000, without informing his employer or coworkers, plaintiff called OSHA to complain about conditions in the plant. Defendant heard from OSHA the next day, March 4, 2000. Plaintiff was discharged on April 11, 2000, by Brad Watt, president of the powder coating division. The letter of termination read:

"We, the management of The Finishing Company, do not believe your leadership of the employees on your shift has been adequate to properly supervise. Unfortunately, you have not developed to a level we expected and do not set a good example for the employees on your shift. We feel it is not in the Company's best interest to keep your employ."

Two days later, April 13, 2000, Watt sent a memo to Billy Carlson, the president of The Finishing Company:

"Per your instruction and recommendation to adopt cost containment measures in the Powder Coating Division, I elected to reduce our supervisory staff. ***

The only means I could see to reduce costs was to permanently lay off the first shift supervisor, Cutberto Gomez, and give the bulk of his responsibilities to the General Foreman ***. ***

I have no intention of reinstating this position in the future, as I believe we will be able to perform at optimum levels without it."

Plaintiff filed a complaint on January 25, 2002, alleging retaliatory discharge. He sought compensatory and punitive damages and the costs of the lawsuit. The matter proceeded to a jury trial. During *voir dire*, the trial court asked the venire, "[I]s there anyone here who has *** an objection to rewarding money damages under any circumstances?" The judge also said, "[s]ometimes in the law there's a concept called punitive damages." He described such damages as being "in the nature of punishment of a defendant." He asked if any prospective jurors opposed punitive damages to the extent that they could not award them under any circumstances. None did.

The trial court granted a motion *in limine*, barring defendant from presenting evidence of its cost-cutting measures in effect at the time of the trial in 2005. The trial court ruled that recent cost-cutting measures were irrelevant to conditions in 2000, the year of plaintiff's discharge, and could be prejudicial.

The parties in their briefs refer to another motion *in limine* made by plaintiff to bar evidence that he received unemployment compensation benefits. Neither party gave us an accurate page citation in the record for this motion or the trial court's ruling. The lack of support in the record precludes our review of defendant's claim that the trial court erred in barring the

evidence of plaintiff's unemployment compensation.

Plaintiff testified on his own behalf at trial. He said that from 1997 to 2000 he made general complaints to his supervisor and the plant safety manager about high levels of heat, smoke and paint dust in the work environment. Plaintiff said masks provided by the safety manager did not prevent paint dust from entering the body. He said that when he cleaned up at home after work, he would find residue in his nose the color of the paint he had used that day—blue, white or green. "Sometimes it's scary because it's a lot of paint inside your body," he testified. Plaintiff said smoke, powder paint and dust were in the lunch area and contaminated the food.

On March 3, 2000, plaintiff made a telephone call to OSHA, after learning of the existence of OSHA from his wife. He told the person who answered the telephone at OSHA of his complaints about the plant and asked to remain anonymous because he did not know what would happen if defendant learned he had called. The next day, he saw Arturo Bahena, the plant manager, talking to Watt. Plaintiff said Bahena was very angry when he came out of the meeting. Bahena showed plaintiff a letter from OSHA and asked him who had called OSHA. When plaintiff said he did not know, Bahena asked him to find out. Plaintiff described the atmosphere in the plant as "tense."

Plaintiff then testified that soon after the receipt of the OSHA letter, Connie Vrenios, the plant safety manager, called plaintiff into her office and gave him a safety manual. He refused to sign a paper, stating he had read the manual, because the conditions in the plant were usually unlike those described in the manual. Plaintiff said when inspectors came to investigate the complaint made to OSHA, the rate of production had been reduced, so there were lower

temperatures and fewer paint guns in operation. About one hour after the inspector left, plaintiff was told to start running the line at the usual rate. Photographs of the inside of the plant taken by plaintiff in March 2000 were entered into evidence.

Plaintiff testified that on April 11, 2000, Bahena told him that Watt wanted to talk with him. Watt gave plaintiff the termination letter. The meeting lasted 10 to 15 minutes. Plaintiff said he was not told that he was being fired as a cost-cutting measure. He said he had difficulty finding work after his discharge.

Plaintiff admitted on cross-examination that he was unaware of the company's financial condition. He said Watt apologized for discharging him and offered to give him references for another job. Nothing was said about OSHA. Defense counsel asked plaintiff questions about his salary at the company and at his job after his discharge, but not about his unemployment compensation. Plaintiff said he did not tell the safety manager or the plant manager that he had called OSHA.

Vrenios was called by plaintiff as an adverse witness. She testified that she believed plaintiff was a good employee and she continued to hold that opinion through the date of his discharge. She said plaintiff had expressed complaints and concerns about environmental conditions in the plant and he appeared to be frustrated with defendant's response or lack of response. She testified on cross-examination that she did not know that plaintiff had called OSHA and he was not discharged because of the call to OSHA.

Brad Watt was called by plaintiff as an adverse witness. He said that until he received the letter from OSHA, he did not know that ventilation, paint dust and smoke were problems in the

plant. He said he was "inconvenienced" by the letter from OSHA and he "wondered" who had called OSHA. He said he had once considered plaintiff a good employee but he had noticed a decline in plaintiff's performance in the 12- to 18-month period before his discharge. Watt admitted that plaintiff received a raise in 1999. Watt had no documentation of the alleged decline in plaintiff's performance. Watt said he did not make the decision to discharge plaintiff until a few days before he did so. Watt said the company needed to fire one of the plant's four supervisors as a cost-containment measure and he chose plaintiff because of plaintiff's declining performance. Watt said he found plaintiff's supervision to be deficient because plaintiff did not send his supervisees to clean the bathrooms and lunchrooms, nor was plaintiff very enthusiastic about doing his job. Watt said he did not learn until plaintiff's lawsuit was filed that it was plaintiff who had called OSHA.

Arturo Bahena was called by plaintiff as an adverse witness. Bahena said plaintiff was a good employee and he had no problems with him. Bahena said he heard rumors in 1999 and 2000 that employees were complaining about paint accumulating in the production area. He denied that he asked plaintiff to find out, or that he was instructed to conduct an investigation to find out, who had called OSHA.

Mario Lagunas testified that he started working at the plant at about the same time as plaintiff. He said plaintiff was a good employee and a good supervisor. He said he never heard anyone in management criticize plaintiff. Lagunas said there were smoke and paint dust in the plant in 1999 and 2000 and that masks were not available to all employees. Lagunas said the OSHA call was discussed in a weekly meeting he attended where Bahena said, "it's for sure that

the person who called OSHA is going to be fired." He said Bahena was upset and was trying to find out who had made the call.

On cross-examination, Lagunas admitted he no longer worked for defendant. He said Bahena did not have the authority to fire a supervisor. Lagunas said that despite his deposition testimony that Bahena told him plaintiff was fired for failing to obey orders, Bahena actually said plaintiff was fired for not fulfilling the required standards.

Olga Gomez, plaintiff's wife, testified about the stress plaintiff experienced after his discharge.

Defendant's case began with an examination of plaintiff as an adverse witness. Plaintiff admitted that he had taken more photographs of the plant than those shown to the jury. He said he made a videotape of his workplace in 1995 to show to people he visited in Mexico.

Vrenios testified that she did not agree with the discharge of plaintiff. She did not think the discharge had anything to do with the OSHA investigation, but she was not happy about it. She said that she and other upper management employees took a 20% salary reduction as a cost-cutting measure in April 2000.

Watt testified that when plaintiff was discharged, sales were down and defendant was having financial trouble. He said that when he decided to discharge plaintiff as a cost-cutting measure, he did not know who had called OSHA. He said if OSHA had never entered the picture, the result—plaintiff's discharge—would have been the same. He said he was pleased with the results of the environmental testing that was done as a result of OSHA being contacted. He said by the time he discharged plaintiff, the OSHA investigation was over. He testified: "[W]hen

[plaintiff] was getting ready to leave, he said to me, just because you fire me does not mean that the calls to OSHA will stop." Watt said he thought plaintiff was going to tell him that one of the hourly workers had called OSHA, but plaintiff did not do so. Watt said that even then, he did not know it was plaintiff who had called OSHA. On cross-examination, Watt was impeached with the transcript of his deposition where he had said he did not recall details surrounding plaintiff's discharge.

At the close of evidence, the trial court determined that plaintiff had established a *prima facie* case and that there were "clear issues for the jury." The trial court also determined that it would allow a punitive damages instruction. It concluded that if the jury was convinced that plainitff was fired for calling OSHA, then a punitive damages award would be warranted. Defense counsel responded, "I would obviously object on the record to the giving of the punitive damage instruction."

The trial court gave jury instructions, including the following non-Illinois Pattern Jury Instruction:

"It was the duty of the defendant before and at the time of the occurrence to refrain from willful and wanton conduct by terminating [plaintiff's] employment for contacting *** OSHA. When I use the expression 'willful and wanton conduct,' I mean a course of action which shows an utter indifference to or conscious disregard for the plaintiff's right to contact [OSHA]. If you find the defendant's conduct in terminating the plaintiff's employment was willful and wanton and if you believe that justice [and] the public good require, you may, in

8

addition to any other damages to which you find the plaintiff is entitled, award an amount which will serve to punish the defendant and deter the defendant and others from similar conduct."

The jury returned a verdict in favor of plaintiff and against defendant. It awarded damages of $111,601.74: $26,601.74 in lost wages; $15,000 in loss of enjoyment of life, emotional pain and suffering and anguish, inconvenience, humiliation and loss of self-respect; and $70,000 in punitive damages. The jury answered "yes" to the special interrogatory, "Was the plaintiff terminated from his employment in retaliation for calling [OSHA]?"

Defendant in its posttrial motion sought an entry of a judgment *n.o.v.*, a directed verdict in its favor, a new trial or remittitur. The trial court denied the posttrial motion in its entirety.

Defendant appeals from the denial of its posttrial motion. It asks this court to: (1) order a judgment *n.o.v.*; (2) grant a new trial; or (3) grant it remittitur or "setoff" of $7,200, the amount of plaintiff's unemployment benefit, to reduce the jury's award for lost wages.

The questions here require varying standards of review. We review *de novo* a claim that the trial court erred in denying a motion for a judgment *n.o.v.* Northern Trust Co. v. University of Chicago Hospitals & Clinics, 355 Ill. App. 3d 230, 241, 821 N.E.2d 757 (2004). We review a jury's verdict on a claim of retaliatory discharge to determine whether the verdict was against the manifest weight of the evidence. Marin v. American Meat Packing Co., 204 Ill. App. 3d 302, 309, 562 N.E.2d 282 (1990). We review a court's ruling on a motion for a new trial for an abuse of discretion. Maple v. Gustafson, 151 Ill. 2d 445, 455-56, 603 N.E.2d 508 (1992). We review a court's denial of a motion for remittitur for an abuse of discretion. Buckholtz v. MacNeal

Hospital, 337 Ill. App. 3d 163, 168, 785 N.E.2d 162 (2003). A trial court abuses its discretion when no reasonable person could take the view adopted. People v. Illgen, 145 Ill. 2d 353, 364, 583 N.E.2d 515 (1991).

Defendant's first claim is that the trial court should have granted the motion for a judgment *n.o.v.* because: (1) plaintiff failed to prove that defendant's legitimate, non-retaliatory reason for eliminating plaintiff's position was a pretext for unlawful retaliation; and (2) plaintiff failed to prove that defendant knew plaintiff had contacted OSHA. Plaintiff argues that the jury verdict should stand because he established a *prima facie* case of retaliatory and pretextual discharge.

A judgment *n.o.v.* is proper only if all the evidence, when viewed in a light most favorable to the party opposing the motion, so overwhelmingly favors the proponent of the motion that a contrary verdict could not stand. Northern Trust, 355 Ill. App. 3d at 241.

In general, a noncontract employee serves at the will of his employer and can be discharged for any reason or no reason. Sherman v. Kraft General Foods, Inc., 272 Ill. App. 3d 833, 836, 651 N.E.2d 708 (1995). A limited exception to this general rule allows employees who are discharged for exercising certain rights to state a cause of action for the tort of retaliatory discharge. Sherman, 272 Ill. App. 3d at 836. A plaintiff states a cause of action for retaliatory discharge where he makes a sufficient showing that he was discharged for reporting occupational health hazards. Sherman, 272 Ill. App. 3d at 840. The provisions of the federal OSHA statute (29 U.S.C. §660(c)(1) (1988)) do not preempt a claim of retaliatory discharge under state law. Sherman, 272 Ill. App. 3d at 840.

"To establish a *prima facie* case of retaliatory discharge, a plaintiff must show that (1) he exercised a statutory or constitutional right; (2) he was discharged in retaliation for his activity; and (3) the defendant's conduct was motivated by unlawful considerations, that is, the discharge was in contravention of a clearly mandated public policy." Selof v. Island Foods, Inc., 251 Ill. App. 3d 675, 677-78, 623 N.E.2d 386 (1993).  While there is no bright line demarcation between matters of public policy and matters that are purely personal, our supreme court has recognized the tort of retaliatory discharge where the subject matter " 'strike[s] at the heart of a citizen's social rights, duties, and responsibilities.' " Stebbings v. University of Chicago, 312 Ill. App. 3d 360,  365, 726 N.E.2d 1136 (2000), quoting Palmateer v. International Harvester Co., 85 Ill. 2d 124, 130, 421 N.E.2d 876 (1981).  Preventing the discharge of an employee who reports occupational health hazards furthers the public policy of protecting the lives and property of Illinois citizens. Sherman, 272 Ill. App. 3d at 839.

"If the plaintiff succeeds in proving a *prima facie* case, the burden of proof shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." All Purpose Nursing Service v. Illinois Human Rights Comm'n, 205 Ill. App. 3d 816, 827, 563 N.E.2d 844 (1990).  If the employer is able to articulate a legitimate, nondiscriminatory reason for the employee's discharge, then the plaintiff has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not true, but a pretext for discrimination. All Purpose Nursing Service, 205 Ill. App. 3d at 827.  The plaintiff need not present direct evidence of a discriminatory motivation or pretext. All Purpose Nursing Service,

205 Ill. App. 3d at 827. A plaintiff fulfills his burden of proof if he can show that the employer's explanation is not believable or raises a genuine issue of fact as to whether the employer discriminated against the plaintiff. All Purpose Nursing Service, 205 Ill. App. 3d at 827.

Here, the trial court concluded that plaintiff presented a *prima facie* case. Plaintiff showed evidence of retaliation when he established that he was discharged without warning about five weeks after defendant was contacted by OSHA. But there was more than just a temporal connection between the OSHA call and plaintiff's discharge. Plaintiff also showed that his discharge came soon after his refusal to sign for the company's safety manual, which was distributed during the pendency of the OSHA investigation. He presented the testimony of defendant's employees that they expected the person who called OSHA to be fired. He showed that his work history did not support a performance-related termination.

Defendant responded with nondiscriminatory reasons for the discharge, including cost-cutting measures and issues related to defendant's job performance or the redundancy of supervisors on his shift, or both. Defendant's witnesses testified that upper management did not know that plaintiff was the employee who had called OSHA. But Watts' admission that he was inconvenienced by the call and wondered who made it could have supported plaintiff's claim of retaliatory discharge. Further support came in the form of inconsistencies in defendant's reasons for discharging plaintiff. Plaintiff's termination letter stated that the discharge was performance related, but Watt's memo to Carlson attributed the discharge to cost containment. These inconsistencies could have diminished Watts' credibility in the eyes of the jury and added weight

to the allegation of pretext. Despite the lack of direct evidence of a pretext, plaintiff was able to meet his burden of proof by showing that defendant's explanations were not believable. See All Purpose Nursing Service, 205 Ill. App. 3d at 827.

With this evidence, the jury could have found that plaintiff established a *prima facie* case of retaliatory discharge. Defendant articulated nonpretextual reasons for its actions, but plaintiff presented evidence that these reasons were not believable. The evidence, when viewed in a light most favorable to plaintiff, supports the jury's verdict. We will not disturb the trial court's denial of defendant's motion for a judgment *n.o.v.*

Defendant relies on three cases in which the appellate court found that the plaintiff had failed to establish that his discharge was retaliatory: Carter v. G.C. Electronics, 233 Ill. App. 3d 237, 244, 599 N.E.2d 11 (1992) (summary judgment for the defendant was proper where the plaintiff failed to show that his employer was aware that he was going to refuse to participate in allegedly illegal conduct when the plaintiff was discharged); Groark v. Thorleif Larsen & Son, Inc., 231 Ill. App. 3d 61, 64-65, 596 N.E.2d 76 (1992) (involuntary dismissal of a retaliatory discharge action was proper where the plaintiff's termination was shown to be part of a general cutback in employment, not in retaliation for filing a workers' compensation claim); Fuentes v. Lear Siegler, Inc., 174 Ill. App. 3d 864, 867, 529 N.E.2d 40 (1988) (summary judgment for the defendant was proper where the plaintiff's pleadings could not support the inference that the plaintiff was discharged for exercising his right to seek workers' compensation).

Each of these cases was decided as a matter of law because the plaintiff failed to establish

an essential element of his cause of action. Here, the trial judge specifically found that plaintiff had established a *prima facie* case, denied a motion for a directed verdict and submitted the case to the jury. At this stage, Carter, Groark, and Fuentes are of no help to defendant. A jury heard the evidence and concluded that defendant learned plaintiff had called OSHA and discharged him in retaliation for doing so.

Defendant next argues that a new trial should have been granted because of these alleged errors: (1) the trial judge mentioned the availability of punitive damages to the jury before opening statements and the presentation of evidence which unfairly led the jury to believe that defendant not only committed retaliatory discharge but acted maliciously; (2) the judge erroneously allowed plaintiff to pursue a claim for punitive damages; (3) the judge's refusal to admit evidence of plaintiff's unemployment compensation misled the jury to believe that plaintiff had no stream of income after his termination; and (4) the judge prevented defendant from showing that plaintiff's termination was a legitimate cost-cutting measure by barring evidence that management employees had taken reductions in salary after 2000.

We review a claim that the trial court erred in denying a motion for a new trial for an abuse of discretion. Maple, 151 Ill. 2d at 456. We consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. Knauerhaze v. Nelson, 361 Ill. App. 3d 538, 557, 836 N.E.2d 640 (2005).

As to defendant's claim that the mention of punitive damages in *voir dire* caused prejudice by leading the jury to believe defendant acted maliciously, defendant cites no authority in his brief

for this claim. Contentions of error unsupported by argument or citation to authority are considered waived. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001; People v. Brown, 363 Ill. App. 3d 838, 840 n.1, 842 N.E.2d 1141 (2005).

Defendant next claims that the trial court erred in allowing plaintiff to pursue punitive damages and in failing to vacate the jury's award of punitive damages. "It is well settled that, when the facts permit, punitive damages may be properly awarded in retaliatory discharge cases." Howard v. Zack Co., 264 Ill. App. 3d 1012, 1027, 637 N.E.2d 1183 (1994). The purpose of punitive damages is: "(1) to act as retribution against the defendant; (2) to deter the defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct." Hazelwood v. Illinois Central Gulf R.R., 114 Ill. App. 3d 703, 712, 450 N.E.2d 1199 (1983).

Punitive damages are appropriate "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 186, 384 N.E.2d 353 (1978). "Wilful and wanton conduct by a defendant may be amenable to punitive damages in a proper case." Reiss v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 77 Ill. App. 3d 124, 136, 395 N.E.2d 981 (1979).

We review *de novo* the question of whether punitive damages are available in a particular cause of action. Franz v. Calaco Development Corp., 352 Ill. App. 3d 1129, 1138, 818 N.E.2d 357 (2004). "The trial court submits the issue of punitive damages to the jury when it determines that, as a matter of law, the evidence will support an award of punitive damages."

Franz, 352 Ill. App. 3d at 1138. Once determined that punitive damages are, as a matter of law, appropriate to the cause of action, a trial court's decision to submit the question to a jury will not be reversed absent abuse of discretion. Franz, 352 Ill. App. 3d at 1138. A jury's factual determination that a defendant acted willfully or maliciously will be reversed only if it was against the manifest weight of the evidence. Franz, 352 Ill. App. 3d at 1138.

In reviewing a jury's determination of the amount of punitive damages, if any, we will reverse only if the award was "so excessive [as] to indicate passion, partiality, or corruption." Franz, 352 Ill. App. 3d at 1138. "The amount of an award should be a reflection of the fact finder's determination as to the degree of maliciousness evinced by a particular defendant's actions." Franz, 352 Ill. App. 3d at 1144. The appellate court does not reassess the credibility of witnesses at trial in reviewing the maliciousness of conduct for purposes of punitive damages awards. Franz, 352 Ill. App. 3d at 1144. "A jury has a unique ability to articulate community values in evaluating the reprehensibility of a defendant's conduct for purposes of awarding punitive damages." Franz, 352 Ill. App. 3d at 1144. A jury must evaluate available evidence of a defendant's financial worth in calculating punitive damages, but a jury award will not be overturned just because the defendant did not present evidence of financial worth at trial. Franz, 352 Ill. App. 3d at 1144, citing Kochan v. Owens-Corning Fiberglass Corp., 242 Ill. App. 3d 781, 798, 610 N.E.2d 683 (1993). If the trial court finds that a jury award for punitive damages is excessive, it may enter an order of remittitur that will not be reversed absent an abuse of discretion. Franz, 352 Ill. App. 3d at 1139.

As a matter of law, punitive damages are available here because this is a retaliatory discharge case. The trial court's decision to submit the question to the jury was not an abuse of discretion because defendant's actions could have been seen as willful and in wanton disregard of plaintiff's rights. Kelsay, 74 Ill. 2d at 186; Reiss, 77 Ill. App. 3d at 136. After hearing evidence in support of both sides, the jury's factual finding that punitive damages were warranted by defendant's willful or malicious acts was not against the manifest weight of the evidence. Although defendant frames its challenge to the jury's punitive damages award as an appeal of the trial court's denial of remittitur, the underlying question is whether the award of $70,000 in punitive damages can be justified under these facts. "The amount of an award should be a reflection of the fact finder's determination as to the degree of maliciousness evinced by a particular defendant's actions." Franz, 352 Ill. App. 3d at 1144. We will not disturb the jury's punitive damages award. Nor will we overturn the award because defendant failed to present evidence of its financial worth at trial. Kochan, 242 Ill. App. 3d at 798. It cannot be said that the trial court abused its discretion in denying defendant's posttrial motion for remittitur. Franz, 352 Ill. App. 3d at 1139.

Defendant relies on Kritzen v. Flender Corp., 226 Ill. App. 3d 541, 554, 587 N.E.2d 909 (1992), to argue that punitive damages are inappropriate for inadvertence, mistake or errors of judgment. Here, defendant presented no evidence of inadvertence, mistake or errors of judgment. Defendant also cites Cress v. Recreation Services, Inc., 341 Ill. App. 3d 149, 183, 795 N.E.2d 817 (2003), and Doe v. Chand, 335 Ill. App. 3d 809, 819, 781 N.E.2d 340 (2002), to argue

against punitive damages. In <u>Cress</u>, the court found that the conduct alleged by the plaintiff was not sufficiently egregious to warrant punitive damages. <u>Cress</u>, 341 Ill. App. 3d at 183. Here, it was not against the manifest weight of the evidence for the jury to conclude that defendant's conduct was sufficiently egregious to justify punitive damages. In <u>Doe</u>, the court reversed the award of punitive damages after concluding that the statute at issue, the AIDS Confidentiality Act (410 ILCS 305/1 *et seq.* (West 1998)), did not provide for punitive damages. <u>Doe</u>, 335 Ill. App. 3d at 819. Here, case law has made it clear that punitive damages may be appropriate for proven retaliatory discharge. <u>Howard</u>, 264 Ill. App. 3d at 1027.

Defendant next argues that a new trial is necessary because the trial court erred in granting plaintiff's motion *in limine*, barring evidence that he received unemployment compensation. As noted earlier, we have not been able to locate the pages in the record that show whether the trial court granted or reserved judgment on a motion *in limine* barring evidence of plaintiff's workers' compensation benefits. Supreme Court Rule 341(e)(7) requires that the party's appellate arguments contain citations to the pages of the record on which the party relied. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. The failure to provide relevant citations to the record is a violation of Rule 341(e)(7) and results in waiver. <u>Mikrut v. First Bank of Oak Park</u>, 359 Ill. App. 3d 37, 61, 832 N.E.2d 376 (2005). Defendant next claims it is entitled to a new trial because the trial court barred evidence of its cost-cutting measures, including employee salary reductions, that were in effect at the time of the trial. The trial court granted plaintiff's motion *in limine* to bar evidence of defendant's cost-

cutting measures in time frames other than those surrounding plaintiff's discharge in 2000. This court will not interfere with a trial court's ruling on a motion *in limine* absent an abuse of discretion. Agnew v. Shaw, 355 Ill. App. 3d 981, 990, 823 N.E.2d 1046 (2005). Evidence of cost-cuts in 2005 would have no bearing on whether plaintiff's discharge was part of a scheme of cost-cutting in 2000. The trial court's decision to grant plaintiff's motion *in limine* was not arbitrary or unreasonable.

Defendant's final claim is that the trial court should have granted remittitur or "setoff" of the $7,200 plaintiff received in unemployment compensation against the jury's award of $26,601.74 in lost wages. It cites no legal authority for the proposition that the jury's award for lost wages should be reduced by the amount of unemployment compensation and for good reason: this court has held that unemployment payments received by an employee are intended to relieve financial distress and should not be offset against damages. Harden v. Playboy Enterprises, Inc., 261 Ill. App. 3d 443, 455, 633 N.E.2d 764 (1993), citing Schwarze v. Solo Cup Co., 112 Ill. App. 3d 632, 445 N.E.2d 872 (1983).

The judgment of the circuit court is affirmed.

Affirmed.

McBRIDE, P.J., and GARCIA, J., concur.