2025 IL App (3d) 240108

Opinion filed December 19, 2025

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| RUSSELL BRADISH, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellant, | ) | La Salle County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-24-0108 |
| | ) | Circuit No. 22-LA-70 |
| | ) | |
| APERION CARE MARSEILLES, LLC, | ) | The Honorable |
| | ) | Todd L. Martin, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court, with opinion.
Justice Anderson concurred in the judgment and opinion.
Justice Davenport dissented, with opinion.

**OPINION**

¶ 1        Plaintiff, Russell Bradish, a registered nurse, filed a fifth amended complaint for retaliatory

discharge against his former employer, defendant, Aperion Care Marseilles, LLC, alleging that

defendant had wrongfully discharged him from his employment for reporting an inadequate supply

of sterile gloves at defendant's nursing and rehabilitation facility. Defendant filed a motion to

dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS

5/2-615 (West 2022)) for failing to state a cause of action. Following full briefing and a hearing

on the matter, the trial court granted defendant's motion and dismissed plaintiff's fifth amended

complaint with prejudice. In so doing, the trial court found, although somewhat implicitly, that plaintiff had failed to sufficiently allege that his discharge violated a clear mandate of public policy as necessary to establish a claim for retaliatory discharge. Plaintiff appeals. We reverse the trial court's judgment and remand this case for further proceedings.

¶ 2                                            I. BACKGROUND

¶ 3        The facts as set forth in plaintiff's fifth amended complaint and the procedural record can be summarized as follows. Plaintiff was employed by defendant as a registered nurse at defendant's nursing and rehabilitation facility in Marseilles, La Salle County, Illinois. His job duties at the facility included caring for and providing treatment to patients and residents. During the course of plaintiff's employment, defendant failed at times to provide plaintiff with the appropriate personal protective equipment that was necessary for plaintiff to do his work—an adequate supply of sterile gloves. Plaintiff continuously informed defendant about the chronic lack of gloves available for staff members to use at defendant's facility and complained to defendant about his concerns working with and treating residents at the facility without an adequate supply of gloves available. Plaintiff's complaints, which consisted of notifying defendant of the lack of glove supply, provided notice to defendant of a condition that posed a safety hazard to plaintiff, other employees, and patients of defendant.

¶ 4        Despite plaintiff's continuous concerns and complaints, plaintiff alleges that defendant did nothing to remedy the shortage of gloves at its facility. Instead, employees and agents of defendant consistently downplayed and ignored plaintiff's safety concerns and complaints. On May 11, 2020, plaintiff was informed by defendant that his employment with defendant was being terminated. No substantive reason was given for plaintiff's termination, and according to plaintiff, the proximity between his termination and his reports of the shortage of gloves and other safety

2

supplies was such that it indicated that plaintiff was discharged by defendant as a direct result of plaintiff's concerns regarding the lack of necessary protective gloves.

¶ 5     In April 2022, plaintiff filed the instant civil lawsuit against defendant for retaliatory discharge. During the course of the pretrial proceedings, plaintiff amended his complaint several times, primarily in response to the trial court's grant of defendant's motions to dismiss. From a pleading standpoint, the only element of plaintiff's retaliatory discharge claim that was in dispute in the trial court was the public policy element—that defendant's discharge of plaintiff violated a clear mandate of public policy. See *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 500 (2009) (setting forth the elements of a retaliatory discharge claim). To try to establish that element, plaintiff initially linked his glove supply concerns to the COVID-19 pandemic and to his having to provide treatment, without an adequate supply of sterile gloves, to residents at defendant's facility who were infected with COVID-19.

¶ 6     However, in his fifth amended complaint, the operative pleading in this case, plaintiff eliminated all references to the COVID-19 pandemic. With regard to the public policy element of his retaliatory discharge claim, plaintiff alleged in his fifth amended complaint that his discharge violated three public policies that existed in Illinois at the time of his termination (1) a clearly mandated public policy requiring healthcare facilities, such as defendant, to properly manage and ensure the availability of personal protective equipment (PPE) in healthcare settings, (2) a clearly mandated public policy that prohibited employers from discharging any employee who complained of an occupational health hazard or to prevent that employee from reporting such a hazard, and (3) a clearly mandated public policy that required employers to provide their employees with adequate supplies of sterile gloves and other protective equipment to prevent the spread of blood-borne illnesses.

¶ 7　　　　As the source of those public policies, plaintiff cited a federal Occupational Safety and Health Administration (OSHA) regulation that applied to all occupational exposure to blood or other potentially infectious materials (29 C.F.R. § 1910.1030 (2019)). Among other things, the regulation provided that

> "[w]hen there is occupational exposure [to blood or other potentially infectious materials], the employer shall provide, at no cost to the employee, appropriate personal protective equipment such as, but not limited to, gloves, gowns, laboratory coats, face shields or masks and eye protection, and mouthpieces, resuscitation bags, pocket masks, or other ventilation devices." *Id.* § 1910.1030(d)(3)(i).

"Occupational exposure" was defined in the regulation as "reasonably anticipated skin, eye, mucous membrane, or parenteral contact with blood or other potentially infectious materials that may result from the performance of an employee's duties." *Id.* § 1910.1030(b). The regulation also provided that "[g]loves shall be worn [by an employee] when it can be reasonably anticipated that the employee may have hand contact with blood, other potentially infectious materials, mucous membranes, and non-intact skin; when performing vascular access procedures except as specified ***; and when handling or touching contaminated items or surfaces." *Id.* § 1910.1030(d)(3)(ix). The regulation provided further that "[t]he employer shall ensure that appropriate personal protective equipment in the appropriate sizes is readily accessible at the worksite or is issued to employees." *Id.* § 1910.1030(d)(3)(iii).

¶ 8　　　　In addition to setting forth the relevant provisions of the regulation and the background information stated above, plaintiff also alleged in his fifth amended complaint that (1) the regulation applied to plaintiff's job as a registered nurse; (2) plaintiff worked in an environment where it could reasonably be anticipated that he may have hand contact with blood, other

4

potentially infectious materials, mucous membranes, and non-intact skin, or when handling or touching contaminated items or surfaces; (3) the lack of an adequate supply of sterile gloves at defendant's facility posed a clear health risk not only to plaintiff, but also to the community and the public at large, as infectious diseases could easily spread once contracted by plaintiff or other employees of the facility; (4) plaintiff's good-faith reports regarding the shortage of necessary and vital protective equipment supplies were protected activities under the clearly mandated public policy of Illinois; (5) defendant terminated plaintiff, in part, as a result of his complaints concerning gloves and other personal protective equipment; and (6) defendant's termination of plaintiff's employment was an illegal retaliatory discharge in violation of a clearly mandated Illinois public policy, as it would discourage others from reporting occupational health hazards.

¶ 9 Defendant filed a motion to dismiss the fifth amended complaint pursuant to section 2-615 of the Code for failure to state a cause of action and requested that sanctions be imposed upon plaintiff for filing a frivolous pleading (see Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)). Defendant argued in the motion that plaintiff's allegations were insufficient as a matter of law because they failed to show how plaintiff's reports of an inadequate glove supply related to concerns of potential exposure to blood-borne pathogens. Defendant further argued that sanctions were warranted because plaintiff's allegations were not grounded in fact or law, emphasizing that all prior versions of the complaint linked plaintiff's glove shortage concerns to his treatment of COVID-19 patients, not to the risk of exposure to blood-borne pathogens. Plaintiff filed a response opposing the motion to dismiss and the request for sanctions, and defendant filed a reply.

¶ 10 In November 2023, a hearing was held on defendant's motion to dismiss. After listening to the oral arguments of the attorneys, the trial court took the matter under advisement. At a later status hearing, the trial court granted defendant's motion and dismissed the fifth amended

complaint without prejudice. The trial court gave plaintiff leave to file a sixth amended complaint but only if plaintiff paid a $3,000 sanction to defendant's attorney for the attorney fees and costs incurred in preparing and arguing defendant's motion to dismiss plaintiff's fifth amended complaint. Plaintiff subsequently elected to stand on the fifth amended complaint, and the trial court converted its dismissal of that complaint to a dismissal with prejudice. Plaintiff appealed.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, plaintiff argues that the trial court erred in granting defendant's section 2-615 motion to dismiss with prejudice plaintiff's fifth amended complaint for retaliatory discharge against defendant. Plaintiff asserts that the motion to dismiss should not have been granted because the fifth amended complaint properly and sufficiently stated a claim for retaliatory discharge. More specifically, plaintiff contends that the fifth amended complaint pled sufficient facts to establish the public policy element of plaintiff's retaliatory discharge claim, the only element in dispute in the trial court and in this appeal, because the fifth amended complaint alleged sufficient facts to support plaintiff's assertion that his employment was terminated in retaliation for his reports that defendant was failing to provide an adequate supply of gloves to its employees, a circumstance of employment at defendant's facility that violated the clear requirements of the OSHA regulation. In making that contention, plaintiff maintains that he was not required to cite to the OSHA regulation when he reported the inadequate glove supply to defendant to satisfy the public policy element of his retaliatory discharge claim and that he was also not required to plead that he had done so in this case to survive defendant's motion to dismiss. Defendant's argument to the contrary, plaintiff contends, is based upon an incorrect characterization of the law in this area. For all of the reasons stated, therefore, plaintiff asks that we reverse the trial court's grant of

6

defendant's section 2-615 motion to dismiss with prejudice plaintiff's fifth amended complaint and that we remand this case for further proceedings.

¶ 13    Defendant argues that the trial court's ruling was proper and should be upheld. Defendant asserts that the trial court correctly found that plaintiff failed to sufficiently plead the public policy element of his retaliatory discharge claim and correctly granted defendant's section 2-615 motion to dismiss the fifth amended complaint on that basis. According to defendant, plaintiff's fifth amended complaint was lacking as to the public policy element for two reasons. First, defendant maintains, the fifth amended complaint failed to identify a clearly mandated public policy that was applicable under the circumstances of the present case and relied, instead, upon vague and general concepts of public health and safety, an approach that the Illinois Supreme Court has specifically rejected (see *Turner*, 233 Ill. 2d at 502-08 (indicating that to properly plead the public policy element of a retaliatory discharge claim, the plaintiff must, among other things, identify a specific expression of public policy)). Second and finally, defendant contends the fifth amended complaint failed to allege sufficient facts to establish that plaintiff's discharge violated or undermined any such public policy; to tie plaintiff's complaints regarding a glove shortage to a concern about exposure to blood-borne pathogens or other infectious materials or to the requirements of the OSHA regulation; to suggest that defendant had acted wrongfully or improperly; or to even establish any of the specific facts surrounding the purported glove shortage, such as when the glove shortage occurred, how many times the shortage occurred, or any responses that defendant made to plaintiff's complaints about the shortage. For all of the reasons set forth, therefore, defendant asks that we affirm the trial court's grant of defendant's section 2-615 motion to dismiss with prejudice plaintiff's fifth amended complaint for retaliatory discharge against defendant.

¶ 14     A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based upon defects that are apparent on the face of the complaint. See 735 ILCS 5/2-615 (West 2022); *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). In ruling upon a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Heastie*, 226 Ill. 2d at 531. A court does not accept as true, however, legal conclusions or conclusory factual allegations that are not supported by specific factual allegations. *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 59. The crucial inquiry in deciding a section 2-615 motion to dismiss is whether the allegations in the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A plaintiff is not required to prove his case in the pleading stage. The plaintiff must merely allege sufficient facts to establish all of the essential elements of his cause of action. *Visvardis v. Eric P. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that the plaintiff can prove no set of facts that will entitle the plaintiff to relief. *Heastie*, 226 Ill. 2d at 531. In reviewing a trial court's ruling on a section 2-615 motion to dismiss, the appellate court applies a *de novo* standard of review. *Id.* at 530-31. When a *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. The appellate court may affirm a trial court's grant of a section 2-615 motion to dismiss on any basis supported by the record. *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007).

¶ 15     Illinois is an at-will employment state, which means that as a general rule, an employer may discharge a noncontracted/at-will employee for any reason or no reason at all. See *Turner*,

233 Ill. 2d at 500. A limited and narrow exception to that general rule exists, however, for claims of retaliatory discharge. *Id.* To sustain a claim of retaliatory discharge, a plaintiff employee must plead and prove the following three elements: (1) that the employer discharged the employee, (2) that the discharge was in retaliation for the employee's activities, and (3) that the discharge violated a clear mandate of public policy. *Id.* As noted above, only the third element—the public-policy element—is in dispute in the present case.

¶ 16        To sufficiently plead the public policy element of a retaliatory discharge claim, the plaintiff must identify in his pleading a clear mandate of public policy that is violated by the discharge. See *id.* at 503; *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006, ¶ 31. Although no precise definition exists, a clear mandate of public policy generally concerns what is right and just and what affects the citizens of the state collectively. *Turner*, 233 Ill. 2d at 500; *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130 (1981). Such a policy does not encompass purely personal matters but, rather, matters that strike at the heart of a citizen's social rights, duties, and responsibilities. *Turner*, 233 Ill. 2d at 501; *Palmateer*, 85 Ill. 2d at 130. A clear mandate of public policy can be found in the state and federal constitutions, statutes, judicial decisions, and safety regulations. *Palmateer*, 85 Ill. 2d at 130; *Collins*, 2013 IL App (2d) 130006, ¶ 41; *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶ 24; *Sherman v. Kraft General Foods, Inc.*, 272 Ill. App. 3d 833, 839 (1995) (indicating that a clear mandate of public policy can be found in federal law); *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 506-11 (1985) (finding that a clear mandate of public policy was stated in certain federal legislation and regulations that were applicable in that case and were national in scope). Courts in Illinois have identified two situations in which the clear mandate of public policy standard has been met and a retaliatory discharge action will be allowed: (1) when an employee is discharged for filing a

9

workers' compensation claim, and (2) when an employee is discharged for reporting illegal or improper conduct, sometimes referred to as "whistle blowing." *Sherman*, 272 Ill. App. 3d at 838. Plaintiff's fifth amended complaint in the instant case falls into the second category—the whistleblowing category.

¶ 17 In addition to the above, to constitute a clear mandate of public policy, the alleged policy must be sufficiently specific to put employers on notice that discharge decisions relating to that policy could expose them to liability. *Turner*, 233 Ill. 2d at 503 (indicating that a plaintiff who alleges retaliatory discharge must identify a specific expression of public policy); *Collins*, 2013 IL App (2d) 130006, ¶ 31. "An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." (Internal quotation marks omitted.) *Turner*, 233 Ill. 2d at 503. A broad, general statement of public policy, therefore, is insufficient to support a retaliatory discharge claim. See *id.* at 502. Evaluating the public policy element of such a claim with generalized concepts of fairness and justice would result in the at-will doctrine being eliminated. See *id.* at 502-03. Allegations of public policy that have been found to be too general or too vague to be enforced in a retaliatory discharge action include the right to marry a coworker, product safety, promoting quality health care, and the Hippocratic oath. *Id.* at 503. Ultimately, however, the determination of whether a public policy exists and whether an employee's discharge violates or undermines that policy are questions of law for a court to decide. *Id.* at 501.

¶ 18 In the present case, after reviewing the fifth amended complaint and considering the legal principle set forth above, we conclude that plaintiff sufficiently plead the public policy element of his retaliatory discharge claim. See *Sherman*, 272 Ill. App. 3d at 838-40 (recognizing that a clearly mandated public policy existed in Illinois that prohibited an employer from discharging an

10

employee for reporting an occupational health hazard). Consistent with the standard established in *Turner*, the provisions of the OSHA regulation were clear and specific and required healthcare facility employers to provide their employees with an adequate supply of PPE. The blood-borne pathogens policy's nationwide scope is underscored by the express statement of purpose and policy found in the OSHA regulation's authorizing statute: the Occupational Safety and Health Act of 1970 (Act) (29 U.S.C. § 651 *et seq.* (2018)). The Act provides, "The Congress declares it to be its purpose and policy *** to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." *Id*. § 651(b). The Act also prohibits employers from discharging an employee for filing a complaint or otherwise exercising a right afforded by the Act. *Id*. § 660(c)(1). This court has previously stated that the Act "is a *** source of public policy." *Sherman*, 272 Ill. App. 3d at 839. Further, "[a]n employee can state a cause of action [for retaliatory discharge] if he alleges that he was terminated for protesting unsafe working conditions." *Fragassi v. Neiburger*, 269 Ill. App. 3d 633, 638 (1995).

¶ 19    In order to protect workers from illness due to exposure to blood-borne pathogens in facilities such as the nursing home at issue, the regulation mandates that "[w]hen there is occupational exposure, the employer *shall* provide, at no cost to the employee, appropriate personal protective equipment such as, but not limited to, gloves, gowns, laboratory coats, face shields or masks and eye protection, and mouthpieces, resuscitation bags, pocket masks, or other ventilation devices." (Emphasis added.) 29 C.F.R. § 1910.1030(d)(3)(i) (2019). Further, "[t]he employer *shall* ensure that appropriate personal protective equipment in the appropriate sizes is readily accessible at the worksite or is issued to employees." (Emphasis added.) *Id.* § 1910.1030(d)(3)(iii). With regard to employees, the regulation mandates that "[g]loves *shall* be worn when it can be reasonably anticipated that the employee may have hand contact with blood,

other potentially infectious materials, mucous membranes, and non-intact skin; when performing vascular access procedures except as specified ***; and when handling or touching contaminated items or surfaces." (Emphasis added.) *Id.* § 1910.1030(d)(3)(ix). Taken together, the OSHA regulation and its authorizing Act established a clear mandate of public policy and specified how to comply with such policy, requiring employers to furnish appropriate PPE, including gloves, to employees when there is potential occupational exposure. See *Sherman*, 272 Ill. App. 3d at 838-40.

¶ 20    The fifth amended complaint alleges that plaintiff was a registered nurse; that he worked in defendant's nursing and rehabilitation facility; that his job duties at that facility included caring for and providing treatment to patients and residents; and that he "worked in an environment where it could be reasonably anticipated that he may have hand contact with blood, other potentially infectious materials, mucous membranes, and non-intact skin, or when handling or touching contaminated items or surfaces." The complaint further alleges that "prior to May 11, 2020, plaintiff had continuously informed defendant of a chronic lack of gloves available for defendant's staff to use" and that "plaintiff had *** complained to defendant of his concerns regarding working with and treating residents without an adequate supply of gloves available." Finally, the complaint alleges that plaintiff was notified of his termination from employment with defendant and that no substantive reason was given for his termination. These allegations are sufficient at the pleading stage to allege that plaintiff was discharged for his activities of reporting/complaining of the lack of mandated gloves for defendant's employees to survive defendant's section 2-615 motion to dismiss. See *Stop NorthPoint, LLC*, 2024 IL App (3d) 220517, ¶ 34 (recognizing that a section 2-615 motion to dismiss admits all well-pled facts and all reasonable inferences drawn from those facts).

¶ 21    Defendant briefly states that plaintiff failed to allege specific facts regarding the purported glove shortages such as on how many occasions there were shortages, the dates and duration of the shortages, or the specific responses to the complaints by defendant. Defendant asserts that as a result, it is impossible to discern how the glove shortages implicated any specific public policy or concerns about blood-borne pathogens or other infectious materials. We disagree. Plaintiff need not plead every specific fact at the pleading stage. *Daniels v. Venta Corp.*, 2022 IL App (2d) 210244, ¶ 32. A complaint is deemed sufficient if the allegations set forth "reasonably inform the defendants by factually setting forth the elements necessary to state a cause of action." *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982). Reasonable inferences from the facts alleged in a complaint are appropriate. See *Sherman*, 272 Ill. App. 3d at 836. We find that the fifth amended complaint, which alleges that plaintiff had "continuous concerns and complaints" and that he notified defendant regarding glove shortages, is sufficient at the pleading stage. The inference that such glove shortages implicated the previously stated public policy and concerns regarding blood-borne pathogens and other infectious materials is a reasonable one, if not common sense. See *id.* (noting that no discovery had been conducted in finding that "one could still reasonably infer that plaintiff reported the asbestos to Kraft").

¶ 22    The dissent raises and extensively argues the issue of whether the fifth amended complaint pleads enough detail regarding the specific tasks plaintiff, as a nurse, undertakes with his hands when treating patients in defendant's nursing facility. However, the defendant nursing home barely mentions that issue in its brief. The statement that may reasonably be construed as raising that issue is one sentence in the argument section of defendant's brief wherein defendant states, "the complaint still fails to connect [plaintiff's] prior reports of a chronic lack of gloves *** to a concern about exposure to bloodborne pathogens." In focusing upon that issue, the dissent seems to drift

13

from the lane of arbiter to the lane of advocate and even suggests in support of its position different categories of work that nurses in a healthcare facility might perform ("high-risk" duties versus "low-risk" duties) that were not suggested in defendant's appellate brief. See *People v. Woods*, 2024 IL App (3d) 230592, ¶ 34 (recognizing that although the appellate court has the power to raise and decide unargued and unbriefed issues, it must not do so when doing so would have the effect of transforming the court's role from that of jurist to that of advocate).

¶ 23     This is a civil case and defendant is a healthcare facility represented by counsel. What is actually very telling about the fact that defendant did not at any length make the arguments set forth by the dissent is that the defendant and its attorneys know very well what tasks its nurses perform caring for its patients. And with that knowledge, defendant chose not to spend the time and effort to challenge the specificity of the complaint in any great detail or to make the arguments in that regard made by the dissent. Such silence speaks volumes.

¶ 24     Simply put, we find the allegations in the complaint—that plaintiff was a registered nurse; that he worked in defendant's nursing and rehabilitation facility; that his job duties included caring for and providing treatment to patients and residents; and that he worked in an environment where it could be reasonably anticipated that he may have contact with blood, other potentially infectious materials, mucous membranes and non-intact skin, or when handling or touching contaminated items or surfaces—were sufficient at the pleading stage to defeat defendant's section 2-615 motion to dismiss. We agree with the dissent that those allegations track the language in the OSHA regulation; however, those allegations are also factual statements and not mere conclusions. The two are not mutually exclusive. See *Van Dekerkhov v. City of Herrin*, 51 Ill. 2d 374, 376 (1972) (acknowledging that the line between ultimate facts and conclusions of law is not easily drawn and that the same allegation may be deemed to be an allegation of ultimate fact in one context and a

14

legal conclusion in another). The fact that nurses working in healthcare facilities caring for patients have contact with numerous infectious bodily fluids and other materials is common knowledge. We do not believe it is fatal if not described in great detail at the pleading stage. See *Heastie*, 226 Ill. 2d at 531 (stating that in ruling upon a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts). We do however agree with the dissent's statement that we "invoke common sense."

¶ 25                                    III. CONCLUSION

¶ 26        For the foregoing reasons, we reverse the judgment of the circuit court of La Salle County and remand this case for further proceedings on plaintiff's fifth amended complaint.

¶ 27        Reversed and remanded.

¶ 28        JUSTICE DAVENPORT, dissenting:

¶ 29        Respectfully, the majority's conclusion is inconsistent with Illinois's fact-pleading standard. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 367 (2004) ("Illinois is a fact-pleading jurisdiction."); 735 ILCS 5/2-601 (West 2022) (requiring that pleadings contain "substantial allegations of fact"). Unlike notice pleading, which does not require the plaintiff to plead operative facts with particularity, fact pleading "imposes a heavier burden on the plaintiff" to set forth facts sufficient to bring a claim within a recognized cause of action. *Beretta U.S.A. Corp.*, 213 Ill. 2d at 367-68.

¶ 30        "[I]n considering a motion to dismiss, a court must disregard the conclusions that are pleaded and look only to [the] well-pleaded facts." *Id.* If the well-pleaded facts fail to establish sufficiency, "the motion must be granted, 'regardless of how many conclusions the count may contain and regardless of whether or not they inform the defendant in a general way of the nature of the claim against him.' " *Id.* at 368-69 (quoting *Knox College v. Celotex Corp.*, 88 Ill. 2d 407,

15

426 (1981)). Liberal construction of a complaint is a general policy that does not excuse the omission of facts necessary to state a claim. *Id.* at 368 (citing *Teter v. Clemens*, 112 Ill. 2d 252, 256-57 (1986)).

¶ 31 To state a valid retaliatory discharge claim, plaintiff must plead facts establishing that (1) defendant discharged him (2) in retaliation for his activities and (3) "that the discharge violates a clear mandate of public policy." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 500 (2009). Here, the third element is in dispute. To establish this element, plaintiff must plead both a clear mandate of public policy and a violation of that mandate. See *id.*

¶ 32 I agree that plaintiff sufficiently alleged a clear mandate of public policy rooted in the Occupational Safety and Health Administration standards for "bloodborne pathogens" (OSHA regulation) (29 C.F.R. § 1910.1030 (2019)). The OSHA regulation establishes a clear mandate of public policy requiring employers to provide and make accessible appropriately sized personal protective equipment, including gloves, for employees, when there is occupational exposure (bloodborne pathogens mandate). See 29 C.F.R. § 1910.1030(d)(3)(i), (iii) (2019). I do not agree, however, that plaintiff sufficiently alleged a violation of the bloodborne pathogens mandate. For this reason, I dissent.

¶ 33 In finding plaintiff sufficiently pleaded a mandate violation,[1] the majority relies on four undeveloped allegations in the fifth amended complaint. These allegations set forth plaintiff's professional title, a generic job description, defendant's facility type, and a near-verbatim

---

[1]The majority's finding is implicit. Surprisingly, the majority does not squarely address the issue of whether plaintiff adequately pleaded a violation of the bloodborne pathogens mandate. Instead, the majority blurs the line between the elements of a retaliatory-discharge cause of action, concluding plaintiff's "allegations are sufficient at the pleading stage to allege that plaintiff was discharged for his activities of reporting/complaining of the lack of mandated gloves for defendant's employees to survive defendant's section 2-615 motion to dismiss." *Supra* ¶ 20.

16

recitation of a regulatory standard. See *supra* ¶ 21. Straining to extract substance from these allegations, the majority conflates conclusory assertions with well-pleaded facts and speculation with reasonable inference.

¶ 34                                    A. Failure to Plead Occupational Exposure

¶ 35        To survive defendant's motion to dismiss, the fifth amended complaint must sufficiently plead a violation of the bloodborne pathogens mandate. This mandate is contingent on the presence of occupational exposure. See 29 C.F.R. § 1910.1030(d)(3)(i), (iii) (2019). Simply put, the mandate requires employers to furnish gloves only "[w]hen there is occupational exposure." See *id.* § 1910.1030(d)(3)(i). Consequently, a mandate violation cannot be pleaded without substantial factual allegations of occupational exposure. See 735 ILCS 5/2-601 (West 2022) (requiring that pleadings contain "substantial allegations of fact"). "Occupational exposure" is defined in relevant part as "reasonably anticipated skin *** contact with blood or other potentially infectious materials that may result *from the performance of an employee's duties.*" (Emphasis added.) 29 C.F.R. § 1910.1030(b) (2019). Thus, the fifth amended complaint cannot survive the pleading stage by merely alleging that his *work environment* posed a reasonable anticipation of hand contact with bloodborne pathogens (see *supra* ¶¶ 9, 21, 25). Rather, it must provide substantial factual allegations of plaintiff's *work duties* implicating the bloodborne pathogens mandate and the reasonable anticipation of hand contact with bloodborne pathogens that may result from performing those duties. See 29 C.F.R. § 1910.1030(b) (2019).

¶ 36        1. *Plaintiff Failed to Plead Duties Implicating the Bloodborne Pathogens Mandate*

¶ 37        Although plaintiff alleged he was a registered nurse who cared for and provided treatment to residents, he neglected to allege his or any of his colleagues' specific work duties or the conditions of the individuals under their care. Registered nurses often perform duties that do not

17

entail reasonably anticipated hand contact with bloodborne pathogens ("low-risk" duties). These duties include assisting with mobility, monitoring vital signs, delivering oral medication, and educating patients. Because such low-risk duties exist for registered nurses, a generic assertion that plaintiff cared for and treated residents is insufficient to plead the duties necessary to allege occupational exposure.

¶ 38        Plaintiff could have easily alleged duties implicating occupational exposure—duties such as dressing wounds, handling bodily fluids, and managing bleeding episodes ("high-risk" duties). He did not bother to do so. Instead, he invited the trial court to imagine the conditions and job duties he was required to allege.[2] The trial court properly declined the invitation. The court may not supply essential allegations simply because they are imaginable. See *Beretta U.S.A. Corp.*, 213 Ill. 2d at 368  (liberal construction does not excuse the omission of facts necessary to state a claim (citing *Teter*, 112 Ill. 2d at 256-57)).

¶ 39        Relatedly, the complaint described plaintiff's work environment simply as a nursing and rehabilitation facility. A nursing and rehabilitation facility is not synonymous with an emergency room or trauma center. Without more, the court is left to wonder whether defendant's facility housed relatively stable patients or those requiring ongoing wound care. While one might speculate that working in a nursing and rehabilitation facility could conceivably involve high-risk duties, plaintiff has pleaded no facts to support that possibility. See *Jamieson v. American National Safe Deposit Co.*, 133 Ill. App. 2d 647, 651 (1971) ("While we agree that inferences may be drawn

_____

[2]The majority takes issue with the use of "high-risk" and "low-risk" to categorize nursing tasks. *Supra* ¶ 22. The suggestion that a court may not use its own shorthand and must defer to the parties' chosen terminology is extraordinary. These labels are used only for convenience, reflecting nothing more than an application of common sense. "High-risk" duties are those duties from which the court can *reasonably* infer occupational exposure as defined in the OSHA regulation. "Low-risk" duties, by contrast, are those that offer no reasonable basis to infer occupational exposure. Although the majority resists this categorization, its analysis presumes the existence of high-risk duties and overlooks the existence of low-risk duties.

from facts well pleaded, those inferences must be reasonable inferences and not mere conjecture and speculation."). Taken together, plaintiff's broad allegations leave the nature of his work conditions too obscure to support a reasonable inference of duties implicating the bloodborne pathogens mandate.

¶ 40    2. *Plaintiff Failed to Plead Reasonably Anticipated Exposure Resulting From His Duties*

¶ 41    The fifth amended complaint is likewise devoid of any well-pleaded allegations of reasonably anticipated hand contact with bloodborne pathogens. See 29 C.F.R. § 1910.1030(b) (2019) (defining "occupational exposure"). Under the OSHA regulation, an employee must use gloves when it can be reasonably anticipated that the employee may have hand contact with blood, infectious materials, mucous membranes, non-intact skin, or contaminated items. *Id.* § 1910.1030(d)(3)(ix). The fifth amended complaint failed to plead facts substantiating the reasonable anticipation of such hand contact. It merely tracked the regulatory language, alleging, without factual support, that plaintiff's work environment presented the very risks outlined in section 1910.1030(d)(3)(ix). This allegation is conclusory and should be disregarded as such. See *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 59 ("[C]onclusory factual allegations that parrot the elements of a cause of action without underlying factual support, are not taken as true ***."). Without factual allegations of tasks plaintiff performed with his hands, there can be no well-pleaded factual basis for the reasonable anticipation of hand contact with bloodborne pathogens.

¶ 42    The majority, however, invokes "common sense" and "common knowledge" to elevate the complaint's boilerplate allegation to well-pleaded status. This is problematic. While common sense and common knowledge may help evaluate what can reasonably be inferred from the well-pleaded facts, they cannot conjure the foundational facts plaintiff was required to allege. Plaintiff merely asserted that he worked in an environment where exposure to bloodborne pathogens was

19

"reasonably anticipated." Reasonableness reflects a legal standard, not an ultimate fact that can stand on its own. Lacking factual basis, the majority's "common sense" inference is merely conjecture. See *Jamieson*, 133 Ill. App. 2d at 651. In the end, the majority treats a bare conclusion as a well-pleaded fact, embracing a notice-pleading standard our courts have consistently rejected. See *Beretta U.S.A. Corp.*, 213 Ill. 2d at 367.

¶ 43          B. Failure to Plead a Link Between Glove Shortage and Occupational Exposure

¶ 44          Even accepting the majority's "common knowledge" argument entirely, the majority overlooks a clear pleading deficiency. It bears repeating that the bloodborne pathogens mandate does not require an employer to furnish a healthcare employee with gloves *at all times*, irrespective of the employee's specific work duties. Gloves must be furnished only "[w]hen there is occupational exposure." 29 C.F.R. § 1910.1030(d)(3)(i) (2019).

¶ 45          Critically, the fifth amended complaint was devoid of any allegation tying the glove shortage to any instance of occupational exposure. The complaint repeatedly alleged a generalized glove shortage but never once alleged the shortage coincided with a duty involving "reasonably anticipated skin *** contact with blood or other potentially infectious materials." *Id.* § 1910.1030(b). Indeed, the complaint never once alleged that plaintiff or any of his colleagues were ever required to perform a high-risk duty without glove protection.[3] Although we must draw all reasonable inferences in plaintiff's favor, we may not surmise critical facts to correct a clear omission. See *Beretta U.S.A. Corp.*, 213 Ill. 2d at 368 (citing *Teter*, 112 Ill. 2d at 256-57).

---

[3]Proceeding from the hypothetical premise that high-risk duties were in fact well pleaded, one might speculate that the shortage affected staff engaged in high-risk duties. However, it is just as likely that defendant simply allocated its limited glove supply to staff engaged in high-risk duties at the expense of those engaged in low-risk duties. Where competing inferences are equally plausible, choosing one over the other is speculation rather than a reasonable inference, and speculation is no substitute for well-pleaded factual allegations. See *Jamieson*, 133 Ill. App. 2d at 651.

¶ 46                                    C. The Majority

¶ 47        The majority suggests I have strayed into advocacy by focusing on an issue not briefed by defendant's appellate counsel. This suggestion cannot be reconciled with established principles of appellate review. A reviewing court may affirm on any basis supported by the record, a point the majority acknowledges (*supra* ¶ 14 (citing *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007)), *even if the appellee does not raise that basis as grounds to affirm. People v. Ferrell*, 2023 IL App (3d) 220292, ¶ 39; see *Tuna v. Wisner*, 2023 IL App (1st) 211327, ¶ 54. Indeed, the supreme court has reiterated that while " 'a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment' " (emphasis in original) (*People v. Givens*, 237 Ill. 2d 311, 323 (2010) (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978))), it " 'will examine the record for the purpose of affirming a judgment.' " *Id.* (quoting *People ex rel. Akin v. Southern Gem Co.*, 332 Ill. 370, 372 (1928)). This principle applies here especially, where the court is presented with a simple record and the complaint's deficiencies are facially evident. Indeed, this court's application of fact-pleading principles is anchored in the pleading, not the appellate briefing. An appellee's brief, while it may inform the court's analysis, does not prevent the court from applying the correct pleading standard.

¶ 48        In a striking departure from that pleading standard, the majority treats its own speculation about an omission in defendant's appellate brief, a *responsive* brief, as though it were a reasonable inference drawn from the complaint itself. See *supra* ¶ 23. Needless to say, an attorney's failure to press a point in an appellate brief cannot supply allegations the complaint lacks.

¶ 49        The majority's criticism is unfounded for another reason: it is not borne out by the record. The very issue the majority deems unraised in defendant's appellate brief (*supra* ¶ 22) was amply

21

developed in defendant's motion to dismiss. My position is but a logical extension of defendant's own arguments. See *Jacobs v. Abbott Laboratories*, 213 Ill. App. 3d 998, 999-1000 (1991). Moreover, my position accords with the basis for the trial court's ruling. Although this court owes no deference to the trial court's rationale on *de novo* review, its ruling is a matter of record this court may properly consider. See *Givens*, 237 Ill. 2d at 323. The trial court identified the question of reasonable inference as "the biggest part of this analysis" and took the matter under advisement to ponder that very question. At the next hearing, the court observed, "So, now we get into an area that is a little bit unusual because, as I said in the beginning, *what reasonable inferences can the court make in this situation in light of the lack of facts in the fifth amended complaint*?" (Emphasis added.) The trial court's inquiry is an apt framing of the dispositive question on appeal. See *Midwest Sanitary Service, Inc. v. Sandberg, Phoenix & Von Gontard, P.C.*, 2021 IL App (5th) 190360, ¶ 17 (finding lower court's reasoning persuasive on *de novo* review).

¶ 50 The trial court proceeded to find, "There is absolutely no allegations that the plaintiff came into contact with any blood or mucous or anything, only that it could be reasonably anticipated that he may have hand contact; which, ironically, is almost verbatim what is in the standard." The court concluded, "[W]e've got a bloodborne pathogen standard with absolutely no supporting allegations so the court does not feel that it can make any reasonable inferences that would allow the fifth amended complaint to stand."

¶ 51 I fully agree with the trial court's conclusion. It reflects a faithful application of the pleading standard, unmoved by speculation or assumption. The majority, in contrast, appeals to generalized assumptions, which it calls "common knowledge," to excuse the complaint's clear omissions. Although common knowledge extends to broad generalizations of nursing care, it cannot supply the factual predicates required to state a violation of the bloodborne pathogens

22

mandate. Job-specific tasks, patient conditions, and glove allocation policies are not matters of common knowledge. Indeed, it is not common knowledge which tasks plaintiff performed, nor whether those tasks involved occupational exposure, nor what types of patients plaintiff treated, nor whether any of those patients presented conditions giving rise to occupational exposure. Nor is it common knowledge how severe the glove shortage was, nor how the gloves were allocated, nor whether the glove shortage coincided with a high-risk duty. These are all case-specific facts, known to plaintiff, and they are precisely the kind of facts that must be alleged to state a violation of the bloodborne pathogens mandate.

¶ 52                                D. Conclusion

¶ 53        The majority, in an effort to salvage a deficient complaint, appears to take a troubling step away from the role of neutral arbiter. It goes so far as to suggest that an omission in a responsive appellate brief can support inferences lacking factual basis in the complaint itself. It overlooks clear pleading deficiencies and disregards the record on appeal. It invokes common knowledge for matters that are not commonly known. And it speculates as to critical missing facts that are no doubt within plaintiff's knowledge. This approach, if left unchecked, threatens to erode the fact-pleading standard and collapse the boundary between *reasonable* inference and mere speculation.

¶ 54        In the section 2-615 context, pleading insufficiency after several amendments ordinarily arises *in spite of* detailed factual allegations within the plaintiff's knowledge, not for lack of them. Here, however, even after multiple amendments, plaintiff's fifth amended complaint remained factually sparse—a rare posture that may account for the majority's overly generous construction. Typically, I would propose that plaintiff be allowed a chance to amend his complaint. However, because plaintiff has elected to stand on his fifth amended complaint, this court must evaluate that complaint as written, without extending the allegations beyond their fair import.

¶ 55       The complaint alleged only that plaintiff was a registered nurse who cared for and treated patients and residents in a nursing and rehabilitation facility. These allegations fall short of stating plaintiff's specific tasks, his patients' conditions, and, most importantly, the instances where the alleged glove shortage coincided with occupational exposure. See 29 C.F.R. § 1910.1030(d)(3)(i) (2019) (gloves must be furnished only "[w]hen there is occupational exposure"). Plaintiff could have easily supplied these missing factual allegations, yet he chose to stay silent. His silence speaks volumes.

¶ 56       In summary, the fifth amended complaint did not plead key factual predicates as set forth in the OSHA regulation. It thus failed to adequately plead a violation of the bloodborne pathogens mandate and consequently failed to state a claim for retaliatory discharge. See *Turner*, 233 Ill. 2d at 500 (setting forth the elements of a retaliatory-discharge action). I would affirm the dismissal of the fifth amended complaint.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of La Salle County, No. 22-LA-70; the Hon. Todd L. Martin, Judge, presiding. |
| **Attorneys for Appellant:** | Travis J. Dunn, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Elizabeth M. Bartolucci, Jamie L. Filipovic, and Adi Kanlic, of O'Hagan Meyer LLC, of Chicago, for appellee. |